BK5188PG055

#34

Fleet
Small Business Services

# MORTGAGE

ATLANTIS MANAGEMENT, LLC of 790 North Main Street, Providence, RI 02904 (jointly and severally if more than one, the "Mortgagor"), for good and valuable consideration paid, grant(s) to Fleet National Bank, a national banking association created and existing under the laws of the United States of America with its principal office located at 111 Westminster Street, Providence, RI 02903, ("Mortgagee"), WITH MORTGAGE COVENANTS, the land located in Providence, RI and more fully described on Exhibit A, together with all buildings and improvements now or hereafter located thereon (the "mortgaged premises").

TOGETHER WITH, and included as part of the mortgaged premises, all right, title and interest of the Mortgagor in and to the following property, rights and interests: (a) all easements, rights-of-way, streets, ways, alleys, passages, sewer rights, water courses, water rights and powers, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the aforesaid real estate and all land lying in the bed of any street, road or avenue, open or proposed, in front of or adjoining said real estate to the center line thereof; (b) all machinery, apparatus, appliances, equipment, fittings, fixtures and other property of every kind and nature whatsoever owned by the Mortgagor, or in which the Mortgagor has or shall have an interest, now or hereafter affixed to the mortgaged premises, or located upon the mortgaged premises or appurtenant thereto and usable in connection with the present or future operation and occupancy of the mortgaged premises and all building equipment, materials and supplies of any nature whatsoever owned by the Mortgagor, or in which the Mortgagor has or shall have an interest, now or hereafter located upon the mortgaged premises, and together with any replacements therefor, additions thereto, and proceeds thereof; (c) all awards or payments, including interest thereon, and the right to receive the same, which may be made with respect to the mortgaged premises, whether from the exercise of the right of eminent domain (including any transfer made in lieu of the exercise of said right), or for any other injury to or decrease in the value of the mortgaged premises; (d) all Leases and Rents (both as hereinafter defined) of the mortgaged premises, all as now existing or hereafter entered into or arising; (e) all other agreements (including without limitation all utility, management, or similar agreements) affecting the use or occupancy of the mortgaged premises now or hereafter entered into; (f) all proceeds of and any unearned premiums on any insurance policies covering the mortgaged premises, including without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the mortgaged premises; (g) all benefits of any deposit or payments heretofore or hereafter made relating to the mortgaged premises; and (h) the right, in the name and on behalf of the Mortgagor, to appear in and defend any action or proceeding with respect to the mortgaged premises and to commence any action or proceeding to protect the interest of the Mortgagee in the mortgaged premises.

TO HAVE AND TO HOLD the mortgaged premises and said Rents and Leases, together with all the rights, privileges and appurtenances thereunto belonging, unto and to the use of Mortgagee and its successors and assigns forever.

**Obligations Secured.** This Mortgage is granted to secure the following:
the performance and observance by Mortgagor of Mortgagor's obligations to the Mortgagee under the following instruments (all collectively referred to as the "Debt Instruments"): All line of credit agreements, line of credit and term loan agreements, term loan agreements, loan agreements, interest rate swap agreements, interest rate cap agreements, interest rate floor agreements, interest rate hedging agreements, or other similar agreements or arrangements related to the foregoing and accompanying promissory notes by and between the Mortgagor and the Mortgagee, of even date with this Mortgage, in the aggregate maximum principal sum of $476,000.00 including without limitation all obligations from time to time of the Mortgagor to the Mortgagee on account of (i) letters of credit issued by the Mortgagee for the account of the Mortgagor and (ii) bankers' acceptances.
the payment by Mortgagor to Mortgagee of all sums incurred, expended or advanced by Mortgagee pursuant to any provision of this Mortgage;
the payment, performance and observance by Mortgagor of each and every covenant, condition and obligation contained in this Mortgage or referred to herein, or incurred in connection herewith; and
the payment of all other indebtedness now or hereafter owing by Mortgagor to Mortgagee (other than indebtedness incurred primarily for personal, family or household purposes), evidenced by a promissory note or agreement signed by Mortgagor, whether or not otherwise secured.
PROVIDED, NEVERTHELESS, that if Mortgagor, its heirs, personal representatives, successors or assigns, satisfies, pays and performs all of the Debt Instruments and other obligations secured hereby (including any notes or agreements evidencing future advances pursuant to paragraph 18 hereof), and any and all extensions, future amendments, modifications, renewals and replacements thereof, all of which are secured hereby, and until such time pays and performs all of Mortgagor's obligations, covenants and agreements set forth herein, then this Mortgage shall be null and void, otherwise it shall remain in full force and effect. It is an express condition of this Mortgage that it shall not be deemed satisfied or discharged until all terms and conditions set forth in the Debt Instruments have been met and until the Debt Instruments shall have been cancelled and terminated by the Mortgagee, with all terms and conditions thereof having been paid and satisfied in full without any renewal or replacement being issued and

notwithstanding that there may from time to time be zero balances outstanding under such Debt Instruments.

Mortgagor hereby represents and warrants that:

**Power and Authority.** Mortgagor has the requisite power and authority to own its properties and to carry on its business as now being conducted and as contemplated under this Mortgage and each Lease (as hereinafter defined) and to place mortgages and liens upon its assets; Mortgagor has full power and lawful authority to grant, sell and convey the mortgaged premises in the manner and form herein done.

**Compliance.** Mortgagor shall comply with all present and future applicable laws, ordinances, rules, regulations, directives and other requirements of all governmental instrumentalities, including without limitation those relating to Hazardous Substances, within such time periods as required thereby, with time being of the essence.

**Title.** Mortgagor has good and clear, record and marketable title in fee simple to the mortgaged premises subject only to the encumbrances set forth in Exhibit A attached hereto.

**Hazardous Substances.** Each reference in this Mortgage to "Hazardous Substances" shall be deemed to refer to any "chemical liquids," "hazardous material," "hazardous waste," "hazardous substances," "oil," "petroleum products," or "solid, liquid or gaseous products," as defined or referred to in or contemplated by any applicable federal, state, or local environmental law, statute, rule or regulation, and shall also include, without limitation, whether or not included in the definition contained in any such law, statute, rule or regulation, asbestos and other substances or materials which may pose a present or potential hazard to human health or the environment. Mortgagor has never released, generated, stored or disposed of any hazardous substances on the mortgaged premises in violation of any applicable environmental laws, and Mortgagor is not aware of the existence (except in full compliance with all applicable environmental laws), release or threat of release of any Hazardous Substances on or from the mortgaged premises or on or from any property adjacent to or surrounding the mortgaged premises, and for any breach of noncompliance by Mortgagor of its obligations under this Mortgage. The Mortgagor has not received any notice, order, claim or demand from the U.S. Environmental Protection Agency or any state or local governmental agency, authority or body having jurisdiction over Hazardous Substances or the storage or removal thereof with respect to the existence, release or threat of release of any Hazardous Substances. Notwithstanding anything to the contrary in the Mortgage, Mortgagor shall not agree to a deed restriction or other encumberance on the mortgaged premises relating to any Hazardous Substances without the prior written consent of the Mortgagee, which consent the Mortgagee may withhold in its sole discretion.

Mortgagor further covenants and agrees with Mortgagee as follows:

1. **Validity and Enforceability.** This Mortgage is and will remain a valid and enforceable lien on the mortgaged premises; Mortgagor will preserve such title, will forever warrant and defend the same to Mortgagee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons whatsoever, except the holders of the encumbrances, if any, as set forth in Exhibit A.
2. **Repair.** Mortgagor shall at all times keep and maintain the mortgaged premises and each part thereof in sound condition and in a first-class state of decoration and repair.
3. **Compliance.** Mortgagor promptly shall comply with all present and future laws, ordinances, rules, regulations, directives and other requirements of all governmental instrumentalities.
4. **Restrictions.** Mortgagor shall comply with all restrictive covenants and other private restrictions, if any, applicable to the mortgaged premises.
5. **Hazardous Substances.** Mortgagor shall not release, generate, store (except in full compliance with all applicable environmental laws) or dispose of any Hazardous Substances on the mortgaged premises or on any property adjacent to or surrounding the mortgaged premises. In the event that (except in full compliance with all applicable environmental laws) any Hazardous Substances is found on or in the mortgaged premises, Mortgagor shall immediately contain and remove the same in compliance with all state and federal Hazardous Substances laws. The Mortgagor hereby authorizes the Mortgagee and its agents, representatives, appraisers, engineers and other designees, upon reasonable notice, to visit and enter upon the mortgaged premises for purpose of inspecting and/or appraising the same and/or performing environmental site assessments and evaluations. The Mortgagor agrees to pay all reasonable expenses and charges incurred by the Mortgagee in connection with such visits, inspections, appraisals, site assessments and evaluations. Mortgagor agrees to indemnify and hold Mortgagee harmless from and against any and all claims, liabilities, costs and expenses incurred by Mortgagee, including, without limitation, costs of litigation and reasonable attorney's fees, arising from the release, existence or removal of, any Hazardous Substances on or in the mortgaged premises or on any properties adjacent to or surrounding the mortgaged premises. THIS RIGHT OF INDEMNIFICATION SHALL SURVIVE THE PAYMENT IN FULL OF THE DEBT INSTRUMENTS, NOTWITHSTANDING ANY DISCHARGE OF THIS MORTGAGE.
6. **Sales and Transfers.** Mortgagor shall not, directly or indirectly, sell, convey, mortgage, pledge, hypothecate, encumber, lease, assign or otherwise transfer the mortgaged premises or any part thereof or any interest therein (including, without limitation, the transfer of any ownership interest in any Mortgagor that is not an individual) without the prior written consent of Mortgagee. Mortgagee's consent to any sale may be based on, among other things, its determination, in its sole and uncontrolled discretion, as to the acceptability of the terms of sale and as to the creditworthiness, financial strength and competence to manage the mortgaged premises of the proposed purchaser, and the entry into an assumption agreement by the proposed purchaser in form and substance satisfactory to Mortgagee, in its sole and uncontrolled discretion, which agreement may provide for, among other things, an increase in the interest rate applicable to the Debt Instruments and/or other change in the terms thereof. Without limiting the generality of the foregoing, Mortgagor will not create, join or consent to any condominium declaration, private restrictive covenant or other restriction affecting the mortgaged premises or any part thereof, without the prior written consent of Mortgagee.
7. **Easements; Licenses; Etc.** Mortgagor, to the extent reasonably within its control, shall maintain, preserve and renew (a) any and all easements, rights of way, privileges and hereditaments now or hereafter belonging or inuring to the benefit of the mortgaged premises and/or improvements or any part thereof, and (b) any and all licenses. Without the prior consent of Mortgagee, Mortgagor will not initiate, create, join in or consent to any change of zoning with respect

to the mortgaged premises or any part thereof.

8. **Insurance.** Mortgagor shall keep all improvements situated on the mortgaged premises continuously insured against loss by fire and the risks covered under a so-called "extended coverage endorsement", flood, explosion of boilers, heating apparatus and other pressure vessels, and such other hazards, casualties and contingencies as Mortgagee from time to time reasonably may require, in an amount equal to one hundred percent (100%) of the replacement cost of such improvements. All such insurance shall be evidenced by valid and enforceable policies in form and substance satisfactory to Mortgagee. Without limiting the generality of the foregoing: (a) all such insurance policies shall contain an endorsement requiring twenty (20) days written notice to Mortgagee prior to cancellation or change in the coverage, scope or amount of any such policy or policies; and (b) any and all policies evidencing casualty insurance shall provide that any and all loss shall be payable to Mortgagee notwithstanding any act or omission of Mortgagor which might otherwise result in cancellation or forfeiture of said insurance. Mortgagee shall have the right, and Mortgagee is hereby made, constituted and appointed (with full power of substitution and revocation) the true and lawful attorney-in-fact irrevocable of Mortgagor, in the name, place and stead of Mortgagor, but in the sole and uncontrolled discretion of said attorney, (i) to demand, adjust, sue for, compromise and collect any amounts due under such insurance policies in the event of loss; and (ii) to give releases for any and all amounts received in settlement of losses under such policy; and the same shall, at Mortgagee's option, be applied, after first deducting the cost of collection, to the payment of the indebtedness secured hereby, whether or not then due, or to reimbursement of any taxes, assessments, charges, insurance premiums or other obligations paid by Mortgagee pursuant hereto, or, notwithstanding the claims of any subsequent lienor, the same may be used to pay over to Mortgagor for use in repairing or replacing damaged buildings and improvements on the subject property. The Mortgagee, at its sole option, shall have the right to elect whether (i) to retain some or all of such insurance proceeds and apply the same to the Obligations evidenced by the Debt Instruments or (ii) to release some or all of such insurance proceeds to the Mortgagor for repair and restoration of the mortgaged premises. If Mortgagee shall by any manner acquire title to the mortgaged premises, it shall thereupon become the sole and absolute owner of all insurance policies held by or required hereunder to be delivered to Mortgagee, with the sole right to collect and retain all unearned premiums and dividends thereon, and Mortgagor shall only be entitled to a credit, in reduction of the then outstanding indebtedness secured hereby, in the amount of the short rate cancellation refund. Without limiting the generality of the foregoing, in the event of foreclosure of this Mortgage or any transfer of title to the mortgaged premises to a third-party purchaser pursuant to the power(s) in this Mortgage granted Mortgagee, Mortgagee shall be and is hereby authorized and empowered, for and in the name or names and on behalf of Mortgagor and/or Mortgagee, and for the purposes hereinafter set forth, shall be and is hereby made, constituted and appointed the true and lawful attorney-in-fact irrevocable of Mortgagor (with full power of substitution and revocation) in the name, place and stead of Mortgagor, and in the sole and uncontrolled discretion of said attorney, to surrender up the policies of insurance covering the mortgaged premises and any part thereof and to collect any amounts due thereunder or, at its option, to transfer all right, title and interest in and to said policies and the proceeds thereof to any purchaser of the mortgaged premises or any part thereof without obligation to account therefor to any person claiming title to the mortgaged premises; provided, however, that any amounts received by Mortgagee under said policies by way of refunds, dividends or otherwise, as aforesaid, shall be applied to the payment of Mortgagor's obligations under the Debt Instruments, and any surplus shall be paid over as a surplus on foreclosure. The foregoing appointments being coupled with an interest are irrevocable.

9. **Owner Occupancy.** Mortgagor shall occupy, or shall cause an affiliate of Mortgagor to occupy, the Mortgaged Property until all Obligations are paid in full.

10. **Taxes and Assessments.** Mortgagor shall pay, when due, all taxes, assessments, and other charges, fines and impositions attributable to the mortgaged premises (the "Impositions") and shall furnish to Mortgagee, promptly after payment of the same, certificates, receipts or other evidence reasonably satisfactory to Mortgagee of such payment; provided, however, Mortgagor shall not be required to pay and discharge any such Imposition, if and so long as (a) the validity thereof shall be contested by Mortgagor with diligence and in good faith by appropriate proceedings and (b) Mortgagor shall have deposited with Mortgagee a sum equal to the amount being so contested and any additional charge, penalty or expense which may be incurred as a result of such contest; and provided further, however, that any such Imposition and any such additional charge, penalty or expense shall be paid in full and before the mortgaged premises, or any part thereof, shall be seized and sold in satisfaction thereof. Mortgagor shall pay, when the same shall become due and payable, all claims and demands of mechanics, materialmen, laborers and others which, if unpaid, might result in or permit the creation of a lien on the mortgaged premises or any part thereof; provided, however, Mortgagor shall not be required to pay any such claim or demand, if and so long as (a) the validity thereof shall be contested by Mortgagor with diligence and in good faith by appropriate proceedings and (b) in the event that such claim or demand results in a lien or notice of record against the mortgaged premises or any part thereof, Mortgagor shall have bonded or otherwise caused such lien to be removed or discharged. Mortgagor shall pay to Mortgagee, within thirty (30) days after Mortgagee's demand, an amount equal to any and all taxes, assessments or charges of whatever nature (other than taxes on the net income of Mortgagee) which may at any time be assessed against Mortgagee with respect to the mortgaged premises or its ownership or holding thereof, whether under statutes now or hereafter in effect. In the event any such tax, assessment or charge is not or, under applicable law, cannot be so paid by Mortgagor, at the option of Mortgagee, the Mortgagor's obligations under the Debt Instruments shall become immediately due and payable.

11. **Tax and Insurance Payments.** Mortgagee, at any time, upon ten (10) days notice to Mortgagor, may require Mortgagor to pay to Mortgagee, on the first day of each calendar month, a sum equal to (a) one-twelfth (1/12) of the annual Impositions and (b) one-twelfth (1/12) of the annual premiums for the insurance required hereunder to be maintained on the mortgaged premises, the respective amounts of such Impositions and premiums to be reasonably estimated from time to time by Mortgagee (the "Deposited Funds"). Mortgagee shall apply the Deposited Funds to the payment of such Impositions and premiums and shall render an annual accounting to Mortgagor of all disbursements of the Deposited Funds. Although each such monthly payment of Deposited Fund is to be in a lump sum, each component thereof shall be deemed to be held separately by Mortgagor for, and shall be applied only to, the

particular item for which payment was made by Mortgagor, unless Mortgagee, in its discretion, elects otherwise. If at any time Mortgagee estimates that there shall or will not be on deposit with it, at least one (1) month prior to the due date (a) of any item constituting part of the Impositions and/or (b) of any annual insurance premium, a sum sufficient for the payment of such item and/or premium in full, Mortgagor, upon demand, shall pay the amount of such deficiency to Mortgagee notwithstanding that there may already be deposited with Mortgagee sums for the payment of other items which are not yet due. If the amount of the Deposited Funds shall exceed the amount necessary to pay such Impositions and premiums for the then current year, such excess shall be credited against future monthly deposits required hereunder. Unless otherwise required by applicable law, no interest shall be paid on the Deposited Funds, and the Deposited Funds may be commingled with Mortgagee's general funds. Upon payment and other satisfaction in full of the obligations secured hereby, any excess Deposited Funds shall be refunded to Mortgagor. Upon the occurrence of any Event of Default, Mortgagee may apply against the obligations secured hereby, in such manner as Mortgagee may determine, any or all of the Deposited Funds then held by Mortgagee.

12. **Leases.** Mortgagor does hereby transfer, assign and deliver unto Mortgagee the Leases (which term shall be defined as each and every agreement providing for use or occupancy of all or any part of the mortgaged premises, whether written or oral, whether now existing or hereafter arising, and any and all amendments, renewals and extensions thereof), the Rents (which term shall be defined as any and all rents and other payments of every kind due or payable and to become due or payable to Mortgagor by virtue of the Leases, or otherwise due or payable and to become due or payable to Mortgagor as the result of any use, possession or occupancy of all or any part of the mortgaged premises) and all right, title and interest of Mortgagor in and to any and all guarantees of any of the Leases; TO HAVE AND TO HOLD the Leases, the Rents and any guarantees in connection therewith, together with all the rights, privileges and appurtenances now or hereafter in any wise belonging or pertaining thereto, unto Mortgagee, its successors and assigns, forever, subject, however, to the terms and conditions hereinafter provided in this Paragraph 11.

13. **Right of Mortgagee to Collect Rents.** Mortgagor hereby authorizes and empowers Mortgagee to collect the Rents as the same shall become due, and hereby irrevocably directs each and all of the Lessees (which term shall be defined as any tenant pursuant to a Lease) and sublessees to pay to Mortgagee, upon demand by Mortgagee, the rents as may now be due or payable and/or shall hereafter become due or payable; provided however, no such demand shall be made by Mortgagee unless and until there shall have occurred a Default or an Event of Default as such terms or similar terms are used in the Debt Instruments. Until such demand is made, Mortgagor shall have the license to collect or continue to collect the Rents; upon such demand such license shall cease.

**Prepayment of Rents.** Mortgagor's right to collect or to continue to collect the Rents as aforesaid, shall not authorize collection by Mortgagor of any installment of rent or any other payment (exclusive of security deposits) more than one (1) month in advance of the respective dates prescribed in the Leases or otherwise for the payment thereof without the written consent of Mortgagee; and

**Lessee Protection.** No Lessee, sublessee, tenants or other occupant of the mortgaged premises making any payment to Mortgagee pursuant to this Paragraph 11 shall be under any obligation to inquire into or determine the actual existence of any default claimed by Mortgagee.

13.1 **Power of Attorney.** Mortgagee shall be and hereby is authorized and empowered, for and in the name or names and on behalf of Mortgagor and/or Mortgagee, and for the purposes hereinafter set forth, shall be and hereby is made, constituted and appointed the true and lawful attorney-in-fact of Mortgagor (with full power of substitution and revocation) and in the name, place and stead of Mortgagor, and in the sole and uncontrolled discretion of said attorney, to cause the assignment to Mortgagee of any Lease which has not been so assigned after request therefor by Mortgagee. The foregoing appointment, being coupled with an interest, is irrevocable until the obligations under the Debt Instruments are paid and otherwise satisfied in full.

13.2 **Approval.** Mortgagor shall not enter into any Lease without first obtaining Mortgagee's written approval of the terms and conditions thereof and the Lessee thereunder.

13.3 **Rent Roll.** Mortgagor shall, upon Mortgagee's request, supply Mortgagee within five (5) days of such request, a "rent roll," so-called, stating with respect to each unit in the mortgaged premises the name of the tenant thereof, the rent paid by such tenant, the date to which such rent is paid, the date on which such tenant's leasehold interest terminates and the amount held by Mortgagor by way of security deposit from each such tenant; such rent rolls to be certified to as being accurate by Mortgagor.

13.4 **Remedies.** Mortgagee shall have the right forthwith, at its election, and without further notice or demand (except as otherwise specifically provided in this Mortgage or the other Debt Instruments) and without the commencement of any action to foreclose this Mortgage or the exercise of the power of sale Mortgagee has under this Mortgage, to enter immediately upon and take possession of the mortgaged premises, or any part thereof, without further consent or assignment by Mortgagor, and to do, execute and perform any act, deed, matter or thing whatsoever that ought to be done, executed and performed in and about or with respect to the mortgaged premises and the leasing, management, or operation thereof as fully as Mortgagor might do, including, without limitation, the right to institute summary proceedings against any Lessee who shall fail to comply with the provisions of the applicable Lease, with the right to lease the mortgaged premises, or any part thereof, and to collect and receive all of the Rents, issues and profits, and all other amounts past due or to become due to Mortgagor by reason of its ownership of the mortgaged premises and to apply the same, after the payment of all necessary charges and expenses in connection with the operation of the mortgaged premises (including, without limitation, any managing agent's commission, at the option of Mortgagee), on account of the obligations evidenced by the Debt Instruments. If Mortgagor or any other person claiming by, through or under it, (other than any Lessee whose tenancy Mortgagee has agreed in writing not to disturb or whose tenancy Mortgagee, in its sole and uncontrolled discretion, is willing not to disturb) are occupying all or any part of the mortgaged premises, it is hereby agreed that Mortgagor and such other persons shall either immediately surrender possession of the mortgaged premises to Mortgagee and vacate the premises so occupied or pay a reasonable rental for the use thereof, monthly in advance, to Mortgagee. Mortgagee shall also be entitled to have a receiver appointed to enter and take possession of the mortgaged premises, exercise the other rights and remedies available to the Mortgagee hereunder, collect the Rents and apply the same as the court may direct. Mortgagor

also agrees that Mortgagee's legal remedies are inadequate and that Mortgagee shall be entitled to obtain equitable relief.

14. **Incorporation of Statutory Provisions.** This Mortgage is upon the condition that all covenants of Mortgagor contained in this Mortgage and in the Debt Instruments shall be kept and performed, and for any breach of said condition , Mortgagee shall have the right to foreclose this Mortgage under any legal method of foreclosure in existence at the time under any applicable law including, without limitation, the STATUTORY POWER OF SALE, which is expressly incorporated herein by reference, to the extent authorized or allowed by any present or future law of theState of Rhode Island and in connection therewith, the Mortgagor stipulates that this Mortgage secures a loan or loans primarily for business and commercial purposes. No remedy herein conferred on the Mortgagee is intended to be exclusive of any other remedy and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing. Said STATUTORY POWER OF SALE, as well as the MORTGAGE COVENANTS contained in the granting clause of this Mortgage, are those contained in the State of Rhode Island Revised Statutes. Mortgagor agrees for itself, its successors and assigns, that the acceptance, before the expiration of the right of redemption and after the commencement of foreclosure proceedings of this Mortgage, of insurance proceeds, eminent domain awards, Rents or anything else of value to be applied on or to the obligations secured hereby by Mortgagee or any person or party holding under Mortgagee shall not constitute a waiver of such foreclosure. This agreement by Mortgagor is intended to apply to the acceptance and such application of any such proceeds, awards, Rents and other sums of anything else of value, whether the same shall be accepted from, or for the account of, Mortgagor or from any other source whatsoever by Mortgagee or by any person or party holding under Mortgagee at any time or times..
15. **Surrender of Possession.** In the event of any sale of the mortgaged premises under the provisions hereof, Mortgagor shall forthwith surrender possession thereof to the purchaser. Upon failure to do so, Mortgagor shall thereupon be a tenant at sufferance of such purchaser, and upon its failure to surrender possession of the mortgaged premises upon demand, such purchaser, his heirs, legal representatives, successors or assigns, shall be entitled to institute and maintain an appropriate action for possession of the mortgaged premises.
16. **Successors and Assigns.** This Mortgage shall be binding upon Mortgagor and the heirs, executors, administrators, successors and assigns of the Mortgagor and shall inure to the benefit of Mortgagee and successors and assigns of the Mortgagee, as if all such parties were all herein mentioned whenever the parties hereto are referred to. Wherever the words Mortgagor and Mortgagee are used herein they shall include their several successors, grantees and assigns, subject to the limitations of law and of this instrument.
17. **Effect of Conveyance.** In the event the ownership of the mortgaged premises, or any part thereof, becomes vested in a person or entity other than Mortgagor, Mortgagee may, without notice to Mortgagor, deal with such successor or successors in interest with reference to the mortgage and the debt hereby secured, in the same manner as with Mortgagor, without in any way vitiating or discharging Mortgagor's liability hereunder or upon the debt hereby secured. No sale of the premises hereby mortgaged and no forbearance on the part of Mortgagee and no extension of the time for the payment of the debt hereby secured given by Mortgagee shall operate to release, discharge, modify, change or affect the original liability of Mortgagor herein, either in whole or in part.
18. **Future Advances.** This Mortgage permits and secures any and all current and future advances to Mortgagor evidenced by such note or notes as may be signed by Mortgagor payable to Mortgagee and/or pursuant to such agreements as may be entered into by Mortgagor with Mortgagee.. The unpaid principal balance of indebtedness outstanding and secured by this Mortgage shall at no time exceed the principal sum of Four Hundred Seventy-Six Thousand and No/100 Dollars ($476,000.00) ("Maximum Unpaid Principal Balance Secured").
19. **Descriptive Headings; Context.** The captions in this Mortgage are for convenience of reference only and shall not define or limit any provision. Whenever the context so requires, reference in this Mortgage to the neuter gender shall include the masculine and/or feminine gender, and the singular number shall include the plural, and, in each case, vice versa.
20. **Changes to Mortgage.** Mortgagor and Mortgagee may agree to change the interest rate and/or the maturity date of the Debt Instruments or other terms of this Mortgage or of the obligations secured by this Mortgage.

**Receipt Of Mortgage.** Mortgagor hereby declares that the Mortgagor has read this Mortgage, has received a completely filled in copy of it, without charge therefor, and has signed this Mortgage as of the date shown on the top of the first page.

IN WITNESS WHEREOF, Mortgagor has executed and delivered this Mortgage Deed as of 6-12-02.

WITNESS:

[signature]
Witness:
Marc A. Soucy

ATLANTIS MANAGEMENT, LLC

By: [signature]
Name: TAREK WEHBE
Title: Member

EXHIBIT "A"

That certain parcel of land situated in the City of Providence, State of Rhode Island, bounded and described as follows:

Beginning at a point in the relocated westerly line of North Main Street at the northeast corner of the tract herein described, said point being in the southerly line of land of the City of Providence, fourteen and one hundredths (14.01) feet westerly as measured along the southerly line of said City of Providence land from the present westerly line of North Main Street;

Thence running S 22° - 35' 13" W, bounded southeasterly by the relocated North Main Street, a distance of forty-seven and twenty hundredths (47.20) feet to a point of curvature;

Thence along the arc of a circle curving to the right having a radius of twenty (20.00) feet and a central angle of 73°-58'-19" bounded generally southeasterly on the relocated intersection of North Main Street and Livingston Street, a distance of twenty-five and eighty-two hundredths (25.82) feet to a point of tangency in the northerly line of Livingston Street;

Thence running N 83°-26'-28" W, bounded southerly by Livingston Street, a distance of eighty-eight and fifty hundredths (88.50) feet to a point of curvature;

Thence along the arc of a circle curbing to the right having a radius of fifteen (15.00) feet and a central angle of 68°-36'-01" bounded generally southwesterly on the relocated intersection of Livingston Street and Mechanics Avenue, a distance of seventeen and ninety-six hundredths (17.96) feet to a point of tangency, in the easterly line of Mechanics Avenue;

Thence running N 14°-50'-27" W, bounded southwesterly by Mechanics Avenue, a distance of one hundred fifty-two and forty-five hundredths (152.45) feet to a corner;

Thence turning an interior angle of 76°-30'-54" and running N 88°-38'-39" E, bounded northerly by land now or formerly of the Providence Redevelopment Agency, a distance of sixty-one and six hundredths (61.06) feet to land of the City of Providence;

Thence turning an interior angle of 86°-33'-20" and running S 2°-05'-19" W, bounded easterly by land of the City of Providence, a distance of seventy-eight and eighty-four hundredths (78.84) feet to a corner;

Thence turning an interior angle of 255°-42'-20" and running S 73°-37'-01" E, bounded northeasterly by land of the City of Providence, a distance of one hundred twenty-five and fifty-six hundredths (125.56) feet to the point and place of beginning.

The first and last courses forming an interior angle of 83°-47'-46" and said parcel contains thirteen thousand eight hundred fourteen (13,814) square feet of land.

Together with rights of passage of record.

Subject to Restrictions and Terms & Provisions of record in Book 1163 Page 1097.
Subject to Restrictions of record in Book 1174 Page 1055 and Book 3856 Page 125.
Subject to Easements of record in Book 1163 Page 1097 and Book 1163 Page 1110; Corrective Easement of record in Book 1174 Page 1055.

PROPERTY ADDRESS: 790 North Main Street
Providence, RI 02904